**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

**RICHMAN LAW & POLICY**
Kim E. Richman (*pro hac vice* forthcoming)
1 Bridge Street, Suite 83
Irvington, New York 10533
Telephone: (718) 878-4707
Facsimile: (212) 687-8292
E-mail: krichman@richmanlawpolicy.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORINA

| | |
|---|---|
| CAROLINE SPINDEL, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| BURT'S BEES, INC. and THE CLOROX COMPANY, | **JURY TRIAL DEMANDED** |
| Defendants. | |

1  Plaintiff Caroline Spindel ("Plaintiff" or "Spindel"), a resident of Rockland County, New
2  York, individually and on behalf of other similarly situated individuals, by and through her counsel,
3  hereby files this Class Action Complaint for equitable relief and damages against Defendants Burt's
4  Bees, Inc. and its parent company The Clorox Company (collectively, "Burt's Bees" or
5  "Defendants") regarding the deceptive labeling, marketing, and sale of Defendants' cosmetic
6  products ("the Products"),[1] and alleges the following based upon information, belief, and the
7  investigation of her counsel:

8  ## NATURE OF THE ACTION

9  1.     When purchasing cosmetic products, consumers are concerned about whether the
10  product they are purchasing contains any dangerous chemicals. For this reason, consumers seek out
11  beauty products with "natural" representations, which they believe to free from dangerous
12  chemicals.[2]

13  2.     Per- and polyfluoroalkyl substances ("PFAS") are a group of synthetic chemicals that
14  can provide certain marketable benefits for cosmetics products including "hydrophobicity and film-
15  forming ability, which are thought to increase product wear, durability, and spreadability."[3]

16  3.     PFAS, however, are also a group of definitively non-natural chemicals with known
17  harmful effects on people and the environment. Consumers have grown increasingly aware of and
18  concerned about PFAS and presence of such in their bodies, the environment, and the products they
19  use.[4]

---

[1] The following Burt's Bees products are deceptively labeled and advertised as alleged in this Complaint: Burt's Bees Volumizing Mascara and Burt's Bees Lip Balm. Discovery may reveal that additional Burt's Bees' products should be included within the scope of the allegations in this Complaint, and Plaintiff reserves the right to add such products.

[2] Cheryl Wischhover, *The "natural" beauty industry is on the rise because we're scared of chemicals*, Vox (Sept. 18, 2018), https://www.vox.com/the-goods/2018/9/18/17866150/natural-clean-beauty-products-feinstein-cosmetics-bill-fda.

[3] Heather D. Whitehead, et al., *Fluorinated Compounds in North American Cosmetics*, Environ. Sci. Tech. Ltrs. 2021, 538–44, https://doi.org/10.1021/acs.estlett.1c00240.

[4] LastWeekTonight, *PFAS: Last Week Tonight With John Oliver (HBO)*, YouTube (Oct. 4, 2021), https://www.youtube.com/watch?v=9W74aeuqsiU.

---

4.      As a result, there is a growing consumer advocacy movement to eliminate PFAS from various products, including cosmetics.[5]

5.      In fact, on October 18, 2021, underscoring the gravity of the PFAS threat, the Biden-Harris Administration announced "accelerated efforts to protect Americans from per- and polyfluoroalkyl substances (PFAS), which can cause severe health problems and persist in the environment once released, posing a serious threat across rural, suburban, and urban areas."[6]

6.      Hoping to avoid dangerous chemicals as described above, Plaintiff Spindel purchased Burt's Bees "100% Natural Origin" Volumizing Mascara and Burt's Bees "100% Natural" Lip Balm.

7.      In reality, the Products contain organofluorine, which is an indicator of PFAS, which are neither natural nor sustainable.

8.      Far from being a "natural" ingredient, PFAS are a group of synthetic chemicals known to be toxic to humans, even at very low levels.[7] Furthermore, PFAS are considered "forever chemicals," meaning they do not break down naturally in the environment.[8] Use of PFAS in the manufacturing of cosmetics and other products leads to the accumulation of PFAS in soil, water, humans, and elsewhere in the environment, threatening other organisms.[9]

---

[5] Elicia Mayuri Cousins, et al., *Risky Business? Manufacturer and Retailer Action to Remove Per- and Polyfluorinated Chemicals From Consumer Products*, NEW SOLUTIONS: A J. of Environ. & Occupational Health Policy, 2019, 29(2), 242–65, https://doi.org/10.1177/1048291119852674.

[6] *FACT SHEET: Biden-Harris Administration Launches Plan to Combat PFAS Pollution*, The White House, https://bit.ly/3DZvZba (last visited Mar. 24, 2022).

[7] The main concern with cosmetic products is dermal exposure, but studies on PFAS absorption through the skin are limited. Limited studies so far suggest "potential adverse effects from dermal exposure" to PFAS. See Hillary L. Shane, et al., *Immunotoxicity and allergenic potential induced by topical application of perfluorooctanoic acid (PFOA) in a murine model*, 137 Food & Chem. Toxicology 111141 (2020); *see also*, Ji-Seok Han, *Subacute dermal toxicity of perfluoroalkyl carboxylic acids: comparison with different carbon-chain lengths in human skin equivalents and systemic efects of perfuoroheptanoic acid in Sprague Dawley rats*, Archives of Toxicology, doi:10.1007/s00204-019-02634-z.

[8] As an illustration of how "forever" PFAS compounds are, in 1997, when a PFAS manufacturer sought "clean blood samples" to compare to PFAS-tainted samples, the only source of "clean blood" (free of PFAS contamination) was the "preserved blood of soldiers who died in the Korean War, before [PFAS] products spread worldwide." *See Poisoned Legacy*, Environmental Working Group (May 1, 2015), https://www.ewg.org/research/poisoned-legacy.

[9] *Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)*, Nat'l Inst. of Env't Health Sciences ("NIEHS"), https://www.niehs.nih.gov/health/topics/agents/pfc/index.cfm#footnote2 (last visited Mar. 23, 2022); Francisca Pérez, et al., *Accumulation Of Perfluoroalkyl Substances In Human Tissues*, 59 Environ. Int'l 354 (2013).

---

CLASS ACTION COMPLAINT                                                                                    2

9.    Burt's Bees' representations that its Products are "100% Natural" or "100% Natural Origin" mislead consumers into believing that the Products are not made with synthetic, toxic chemicals like PFAS, when in fact the Products are made with such chemicals.

10.    Reasonable consumers, such as Plaintiff Spindel, would not expect a "natural" product to contain man-made chemicals.

11.    In sum, Burt's Bees is deceiving consumers into believing the Products are made without any unnatural chemicals, when in fact some of them contain indicators of PFAS, which are synthetic.

12.    By deceiving consumers about the nature and quality of the Products, Burt's Bees is able to sell a greater volume of the Products, to charge higher prices for the Products, and to take away market share from competing products, thereby increasing its own sales and profits.[10]

13.    Consumers lack the information and scientific knowledge necessary to determine whether the Products are in fact made with PFAS indicators and to know or to ascertain the true quality of the Products.

14.    As a result of its false and misleading labeling and advertising, and omissions of fact, Burt's Bees was and is able to sell the Products to consumers in the State of New York and to realize sizeable profits.[11]

15.    During any applicable statute of limitations period (the "Class Period"), Plaintiff and members of the Class (described below) saw Burt's Bees' "100% Natural" or "100% Natural Origin" misrepresentations when purchasing the Products. Plaintiff and members of the Class (described below) paid more for the Products based upon the misrepresentations than they otherwise would have paid, and/or purchased the Products, or purchased more of the Products, when they would not

---

[10] "In 2019, Burt's Bees generated 19.3 percent of lip balm/treatment sales in the United States," making it "the leading lip balm/treatment brand[] in the United States." *See Dollar sales share of the leading lip balm/treatment brands in the United States in 2019\**, Statista, https://www.statista.com/statistics/463377/us-dollar-sales-share-of-leading-lip-balm-treatment-brands/ (last visited Mar. 24, 2022).

[11] In 2018, one tube of Burt's Bees Lip Balm was sold in the United States every second. *See* Macaela Mackenzie, *Burt's Bees Beeswax Lip Balm Has More Than 1,000 Five-Star Ratings on Target's Website*, Allure (Dec. 15, 2018), https://www.allure.com/story/burts-bees-beeswax-lip-balm-sold-every-second.

have if they had known the truth about the likely presence of PFAS. As a result, Plaintiff and Class Members suffered injury. Contrary to representations on the Products' labeling and advertising, consumers received Products that likely contain PFAS.

16.     Burt's Bees' false and misleading representations and omissions violate New York's General Business Law §§ 349 and 350, and common law.

17.     Because Burt's Bees' labeling and advertising of the Products tend to mislead and are materially deceptive about the true nature and quality of the Products, Plaintiff brings this deceptive advertising case on behalf of a class of consumers who purchased the Products in New York, and seeks relief including actual damages, interest, costs, and reasonable attorneys' fees. Even today, members of the proposed Class are purchasing the misrepresented Products, and they will continue to do so in the future unless Burt's Bees' conduct is stopped.

## JURISDICTION AND VENUE

18.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA").  Plaintiff Spindel is a citizen of New York. There are at least 100 members in the proposed plaintiff class.

19.     On information and belief, Defendant Burt's Bees, Inc. is a citizen of the State of North Carolina, and Defendant The Clorox Company is a citizen of the State of California.

20.     The amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

21.     This Court has personal jurisdiction over the Defendants. Defendants regularly conduct and transact business in New York, purposefully avail themselves of the laws of New York, market their Products to consumers in New York, and distribute their Products to retailers in New York.

22.     Venue is proper in this jurisdiction under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading labeling and advertising regarding the nature and quality of the Products and sales of the Products at issue, occurred within this jurisdiction.

**PARTIES**

**Plaintiff**

23.     On March 1, 2022, Plaintiff Spindel sent a letter via U.S. Certified Mail to Defendants detailing the claims and allegations set forth in this Complaint.

24.     At all times mentioned herein, Plaintiff Spindel was and is an individual consumer over the age of 18. Within the Class Period, Plaintiff purchased the Products labeled "100% Natural" or "100% Natural Origin," in retail stores in New York State.

25.     In deciding to make her purchases, Spindel saw, relied upon,[12] and reasonably believed Burt's Bees' "100% Natural" and "100% Natural Origin" representations.

26.     Spindel was willing to pay the requested price for the Products because she expected the Products to have been made without indicators of harmful, synthetic chemicals, such as PFAS.

27.     Had Spindel known at the time that the Products contained indicators of PFAS, she would not have purchased or continued to purchase the Products.

28.     Spindel continues to purchase cosmetic products, but she does not currently purchase Burt's Bees' products.

29.     Spindel plans to continue purchasing cosmetic products in the future.

30.     Spindel wishes to be able to continue purchasing Burt's Bees' Products and, therefore, wishes to see them definitively made without PFAS. Moreover, Spindel is aware that members of her proposed class are currently purchasing, and will continue to purchase, Burt's Bees' Products, unaware that the "100% Natural" and "100% Natural Origin" representations are not correct, unless Burt's Bees' conduct is enjoined.

**Defendants**

31.     Defendant Burt's Bees, Inc. is a North Carolina subsidiary that maintains its principal place of business in Durham, North Carolina.

---

[12] Reliance is not an element of claims under New York General Business Law ("N.Y. G.B.L.") §§ 349 & 350. Nevertheless, Plaintiff Spindel did rely on Burt's Bees' representations.

32.     Burt's Bees, Inc. advertises, markets, and distributes Burt's Bees' Products in New York. Burt's Bees created and/or authorized the false and deceptive labeling and advertising of the Products.

33.     The Clorox Company is a California company that maintains its principal place of business in Oakland, California. It is the parent company of Burt's Bees, Inc.

34.     Upon information and belief, The Clorox Company wholly owns Burt's Bees, Inc.

35.     Defendants manufacture and/or cause the manufacture of the Products, and market and distribute the Products in retail stores in New York. Defendants created and/or authorized the false and deceptive labeling and advertising of the Products.

## FACT ALLEGATIONS

**A.      Burt's Bees Represents That the Products Are Natural**

36.     The packaging of the Burt's Bees Volumizing Mascara represents that the product is "100% Natural Origin," and the packaging of Burt's Bees Lip Balm represents that the product is "100% Natural," as seen in the images below[13]:

---

[13] *Burt's Bees 100% Natural Origin Volumizing Mascara, Black Brown*, 0.32 Ounce, Amazon, https://www.amazon.com/Burts-Bees-Natural-Volumizing-Mascara/dp/B07YX9YHYM        (last visited Mar. 24, 2022) and *Burt's Bees Beeswax Lip Balm with Vitamin E & Peppermint 0.15 oz (Pack of 6),* Amazon, https://amzn.to/36PXTLo (last visited Mar. 24, 2022).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22    37.    Plaintiff Spindel and consumers like her saw these "natural" representations and

23 believed that the Products would be free from synthetic chemicals, such as PFAS.

24    **B.    Burt's Bees Products Are Neither "100% Natural" nor of "100%**
      **Natural Origin" Because They Contain PFAS Indicators.**
25

26    38.    Contrary to Defendants' representations, the Products not natural because they likely

27 contain PFAS, which are a non-natural, synthetic chemicals found to be damaging to both the

28 environment and human health.

---

39.     PFAS are a family of more than 4,700 highly fluorinated aliphatic compounds manufactured by humans and are known to be damaging to the environment.[14]

40.     Testing conducted on samples of the Products and found ranges from 10 to 207 parts per million (ppm) of fluorine. Fluorine is an indicator that a product contains PFAS.[15]

41.     Subsequent testing revealed that almost all of the fluorine detected was organic fluorine; organic fluorine results identify a quantity of organofluorine compounds (*e.g.*, PFAS) and excludes the possibility that fluorine may be present from other or natural sources.[16]

42.     "PFAS in consumer products designed for children under 12 that are intentionally added or present 'at or above 100 part-per-million (ppm), as measured in total organic fluorine,'" (such as Burt's Bees' Volumizing-Mascara, where 206 ppm of organofluorine was detected) have recently been banned by a series of legislative bills in California due to the toxic and environmentally destructive nature of these chemicals.[17]

43.     These results indicate the presence of PFAS in the Products: "Since the world hasn't found a way to test which of 9,000 PFAS are in products, the best current test methods [for PFAS] look for fluorine,"[18] and "when measuring organofluorine in the environment one can assume that it originates from an anthropogenic source."[19]

---

[14] NIEHS, *supra* note 9.

[15] *See, e.g.*, Whitehead et al., *supra* note 3 (PFAS concentrations were detected by screening for total fluorine); *Testing for PFAS in food packaging*, Supply Chains Solutions Center, https://bit.ly/3fNPHwF (last visited Dec. 16, 2021) (recommending that companies screen for PFAS "using a total fluorine method … [that] measures all forms of PFAS"); Jen Dickman et. al., *Packaged in Pollution: Are food chains using PFAS in packaging?*, https://saferchemicals.org/packaged-in-pollution/ (testing for PFAS using total fluorine amounts) (last visited Dec. 16, 2021).

[16] Lara Schultes, et al., *Total Fluorine Measurements in Food Packaging: How Do Current Methods Perform?*, 6(2) Environ. Sci. Technol. Letters 73 (2019).

[17] *California Issues New PFAS Consumer Product Regulations*, Exponent (Oct. 15, 2021), https://www.exponent.com/knowledge/alerts/2021/10/california-issues-new-pfas-consumer-product/?pageSize=NaN&pageNum=0&loadAllByPageSize=true.

[18] Jessian Choy, *New Independent Study Confirms PFAS in Thinx, Other Products*, Sierra Club (Jun. 3, 2021), https://www.sierraclub.org/sierra/ask-ms-green/new-independent-study-confirms-pfas-thinx-other-products.

[19] Alina Koch, et al*.*, *Towards a comprehensive analytical workflow for the chemical characterisation of organofluorine in consumer products and environmental samples*, 123 TrAC Trends in Analytical Chemistry 115423 (2020) ("[N]o single analytical method is versatile and

44. Thus, by definition, the Products cannot be "100% Natural" or of "100% Natural Origin" because they contain high levels of organofluorine, indicating the presence of PFAS, a synthetic compound.

45. Further, because they contain indicators of PFAS, the Products are not "natural" in any manner that consumers would understand that term to mean.

**C.    Burt's Bees Representations Mislead Reasonable Consumers.**

46. Reasonable consumers encountering Defendants' representations emphasizing that the Products are natural do not expect the Products to contain indicators of synthetic chemicals, such as PFAS.

47. Reasonable consumers would consider any product likely to contain PFAS, which are by definition synthetic and manufactured, to be unnatural.

48. Consumers are at risk of real, immediate, and continuing harm if the Products continue to be sold using false and misleading labeling and advertising.

**D.    Burt's Bees' Representations Are Material to Consumers.**

49. Consumers care about whether the products they use contain synthetic chemicals, especially if the chemicals are also harmful.[20]

50. In a survey of more than 1000 consumers, nearly all participants (98%) indicated they were interested in knowing about the presence of harmful chemicals in everyday products.[21]

51. When shopping for products, consumers look for "natural" claims due to the belief that "natural" means free from synthetic chemicals.[22]

---

robust enough to identify and quantify the vast number of PFASs, as well as other fluorine-containing agrochemicals or pharmaceuticals that might be present in a sample.").

[20] Wischhover, *supra* note 2.

[21] Sabrina Hartmann, et al., *Interested Consumers' Awareness of Harmful Chemicals in Everyday Products*, 29 Environ. Sci. Eur. 1, 4 (2017), https://enveurope.springeropen.com/articles/10.1186/s12302-017-0127-8.

[22] Will Cowling, *Consumers continue to seek products with natural ingredients*, Candy Industry (Jan. 22, 2020), https://www.candyindustry.com/articles/88953-consumers-continue-to-seek-products-with-natural-ingredients ("The research firm found 36 percent of consumers know the [natural] term, used in the food industry to classify products that are . . . free of artificial and synthetic ingredients.").

52.     Additionally, a survey of 15,000 U.S. consumers found that "for younger generations, the biggest consideration when shopping for beauty products was natural, non-toxic ingredients."[23]

53.     Thus, the various natural representations made by Burt's Bees are material to Plaintiff Spindel and other consumers.

## **CLASS ALLEGATIONS**

54.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

55.     This action is maintainable as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

56.     **Class Definition:** The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all consumers who purchased Burt's Bees' Products (as defined herein) during the Class Period (the "Class"). Included in the Class, to the extent necessary, is a subclass of all persons who purchased Burt's Bees' Products (as defined herein) within the State of New York during the Class Period (the "New York Subclass").

57.     Excluded from the Class are (1) Defendants, any entity or division in which a Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

58.     Plaintiff brings the Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

59.     Plaintiff reserves the right to amend the Class definitions if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

60.     Plaintiff reserves the right to amend the Class definitions if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

---

[23] *State of Smoooth Report: Insights from Klarna's 2021 Beauty Survey*, Klarna, https://www.klarna.com/assets/sites/2/2021/03/27044921/The-State-of-Smoooth-Report-Fresh-Faces-Full-Carts-Klarnas-2021-Beauty-Survey-1.pdf (last visited Mar. 24, 2022).

61.     All members of the Class were and are similarly affected by the deceptive labeling and advertising of Burt's Bees' Products, and the relief sought herein is for the benefit of Plaintiff and members of the Class.

62.     **Numerosity:** At this time, Plaintiff does not know the exact number of the Class members. Based on the wide distribution of Burt's Bees' Products throughout New York State, Plaintiff believes that the Class comprises many thousands of consumers. The number of consumers in the Class is so large as to make joinder impracticable, if not impossible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

63.     **Commonality and Predominance:** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include (a) whether Defendants are responsible for the labeling and advertising at issue; (b) whether the labeling and advertising of the Products was unfair, false, deceptive, fraudulent and/or unlawful; (c) whether Burt's Bees breached a warranty created through the labeling and marketing of its Products; and (d) whether Burt's Bees' conduct as set forth above injured, and may continue to injure, Plaintiff and Class members.

64.     **Typicality:**  Plaintiff's claims are typical of those of the Class, as the claims arise from the same course of conduct by Defendants, and the relief sought within the Class is common to the Class members. Plaintiff, like all members of the Class, relied[24] on Defendants' false and misleading representations and purchased Burt's Bees' Products, or purchased more of them, or paid more for the Products than she would have paid if the products had been properly labeled, and sustained injury from Burt's Bees' wrongful conduct. Further, there are no defenses available to Defendants that are unique to Plaintiff.

---

[24] Reliance is not an element of claims under N.Y. G.B.L. §§ 349 & 350. Nevertheless, the "natural" representations were made prominently and uniformly on each Product so that they would be seen prior to purchase.

65.     **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, and she has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class. Undersigned counsel has represented consumers in a variety of actions seeking to protect consumers from fraudulent and deceptive practices.

66.     **Superiority:** The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

67.     Individual joinder of the Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery as a result of the violations alleged herein.

68.     Moreover, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

69.     Plaintiff is unaware of any difficulties in managing this case that would preclude proceeding as a class action.

70.     Certification also is appropriate under Rule 23(b)(2) because Defendants acted, or refused to act, on grounds generally applicable to the Class.

71.     Further, given the large number of consumers of Burt's Bees' Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

1

2

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**
**(On Behalf of Plaintiff and the New York Subclass)**

3

4

72.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

5

6

73.     The acts of Defendants, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

7

8

74.     Burt's Bees has marketed the Products with the phrases "100% Natural" and "100% Natural Origin" when, in fact, they contain indicators of unsustainable and unnatural PFAS.

9

10

11

12

75.     Burt's Bees has violated, and continues to violate, § 349 of the New York General Business Law, which makes deceptive acts and practices unlawful. As a direct and proximate result of Burt's Bees' violation of § 349, Plaintiff and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

13

14

15

16

76.     Burt's Bees' improper consumer-oriented conduct is misleading in a material way in that it, inter alia, induced Plaintiff and New York Subclass members to purchase and to pay the requested price for the Products when they otherwise would not have or would not have purchased as much.

17

18

77.     Defendants made the untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

19

20

21

78.     Plaintiff and New York Subclass members have been injured by their purchase of the Products, which were worth less than what they bargained and/or paid for, and which they selected over other products that may have been truthfully marketed.

22

23

24

79.     Burt's Bees' advertising and the Products' packaging and labeling induced Plaintiff and New York Subclass members to buy the Products, to buy more of them, and/or to pay the price requested.

25

26

27

80.     As a direct and proximate result of Burt's Bees' violation of § 349, Plaintiff and other members of the New York Subclass paid for falsely advertised Products and, as such, have suffered damages in an amount to be determined at trial.

28

---

81.     By reason of the foregoing, Burt's Bees is liable to Plaintiff and the other members of the New York Subclass for actual damages or fifty dollars ($50) for each purchase of a Burt's Bees Product (whichever is greater), attorneys' fees, and the costs of this suit. The court may, in its discretion, increase the award of damages to an amount up to three times the actual damages, up to $1000, based on Burt's Bees' willful and knowing violation of § 349.

82.     In addition, Burt's Bees continues engaging in the deceptive conduct and, upon information and belief, will do so unless enjoined by this Court. Members of the New York Subclass that Plaintiff seeks to represent are purchasing, and will continue to purchase, the misrepresented Products.

83.     The unfair and deceptive acts and practices of Burt's Bees, as described above, present an ongoing threat to Plaintiff and the other members of the New York Subclass.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW § 350**
**(On Behalf of Plaintiff and the New York Subclass)**

84.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

85.     The acts of Defendants, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

86.     New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

87.     GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

88.     Plaintiff and the members of the New York Subclass are consumers who purchased Burt's Bees' Products in New York.

89.     As a seller of goods to the consuming public, Burt's Bees is engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

90.     Burt's Bees' representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Burt's Bees' advertising fails to reveal material facts with respect to its Products, as described above, constitute false advertising in violation of the New York General Business Law.

91.     Burt's Bees' false advertising was knowing and intentional.

92.     Burt's Bees' actions led to direct, foreseeable, and proximate injury to Plaintiff and the members of the New York Subclass.

93.     As a consequence of Burt's Bees' deceptive marketing scheme, Plaintiff and New York Subclass members suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, would not have paid the requested price for the Products, and/or would have purchased less of the Products; moreover, as a result of Burt's Bees' conduct, Plaintiff and the other members of the New York Subclass received products of less value than what they paid for.

94.     By reason of the foregoing, Burt's Bees is liable to Plaintiff and the other members of the New York Subclass for actual damages or five hundred dollars ($500) for each sale of a Product (whichever is greater), attorneys' fees, and the costs of this suit. The court may, in its discretion, increase the award of damages to an amount up to three times the actual damages, up to $10,000, based on Burt's Bees' willful and knowing violation of § 350.

95.     If its conduct is not enjoined by this Court, Burt's Bees will continue to deceptively market its Products in New York.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

96.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

97.     Defendants provided Plaintiff and other members of the Class with a written, express "100% Natural" or "100% Natural Origin" warranty.

98.     These affirmations of fact or promises by Burt's Bees relate to the goods and became part of the basis of the bargain.

99.     Plaintiff and members of the Class purchased the Products, reasonably believing them to conform to the express warranties.

100.     Burt's Bees breached these warranties, resulting in damages to Plaintiff and other members of the Class, who bought Burt's Bees' Products but did not receive the goods as warranted.

101.     As a proximate result of the breach of warranties by Defendants, Plaintiff and the other members of the Class did not receive goods as warranted. Moreover, had Plaintiff and the Class members known the true facts, they would not have purchased the Products, or would have purchased the Products on different terms, or would have purchased less of the Products.

102.     Plaintiff and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial.

103.     On March 1, 2022, in accordance with UCC § 2-607, Plaintiff provided Defendants with written notice of the breaches of warranty described herein via US Mail.  Defendants have refused to redress the aforementioned breaches.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(In the alternative, on behalf of Plaintiff and All Class Members)**

104.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

105.     As the intended, direct, and proximate result of Defendants' conduct, Defendants have been unjustly enriched through sales of the Products at the expense of Plaintiff and the Class members.

106.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff and the Class members, in light of the fact that the Products they purchased were not what Defendants represented to them.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

A.   Certification of the Class proposed herein under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiff Caroline Spindel as representative of the Class; and appointment of her undersigned counsel as counsel for the Class;

B.   A declaration that Burt's Bees is financially responsible for notifying members of the Class of the pendency of this suit;

C.   An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Burt's Bees as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein;

D.   Restitution, disgorgement, refund, and/or other monetary damages, including treble damages, together with costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

E.   An order enjoining Burt's Bees' unlawful and deceptive acts;

F.   Statutory or actual damages pursuant to New York General Business Law §§ 349 and 350, and treble damages pursuant to § 349;

G.   Punitive damages in accordance with proof and in an amount consistent with applicable precedent; and

H.   Such further relief as this Court may deem just and proper.

## PRAYER FOR RELIEF

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  March 25, 2022                    **BURSOR & FISHER, P.A**.

By:   _/s/ L. Timothy Fisher_
          L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596

Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

**RICHMAN LAW & POLICY**
Kim E. Richman (*pro hac vice* forthcoming)
1 Bridge Street, Suite 83
Irvington, New York 10533
Telephone: (718) 878-4707
Facsimile: (212) 687-8292
E-mail: krichman@richmanlawpolicy.com

*Attorneys for Plaintiff*